In the Matter of Acquiring Title by the COUNTY OF NASSAU to an Easement in Perpetuity for Highway Purposes in and over Certain Portions of Hempstead-Farmingdale Turnpike, Part 4, (Bethpage Turnpike) from Glen Cove-Massapequa Road Easterly to the County Line, in the Town of Hempstead, County of Nassau and State of New York, Duly Selected by the Board of Supervisors of the County of Nassau for Use of Said County as a Highway According to Law.

County Court, Nassau County, April 17, 1936.

*James L. Dowsey, County Attorney* [*Robert W. Duvall* of counsel], for the county of Nassau.

*Sidney H. Swezey,* for the claimants.

*Theodore N. Ripsom,* for Annie Vanek, owner (with reference to parcel 115).

JOHNSON, J.   This is a motion by the county of Nassau to confirm the report of commissioners appointed in the proceeding instituted by the county to acquire certain lands for the widening of an existing highway.   Objections have been interposed by owners abutting upon the highway whose lands have thus been taken for the widening of the highway.

One of such objections is that the commissioners failed to award any compensation for trees.   These trees were not on the property actually taken.   On the contrary, they were within the bounds of the highway as it existed before the contemplated widening.   The claim of the abutting owners, however, is that when the highway is thus widened, the trees will have to be removed as they will doubtless then be outside the sidewalk area and within the traveled highway area.

In support of their claim they cite *Donahue* v. *Keystone Gas Company* (181 N. Y. 313) and *Lane* v. *Lamke* (53 App. Div. 395).

In the *Donahue Case* (*supra*) the action was by an abutting owner against a gas company to recover damages for shade trees in front of the owner's premises, which had been destroyed by the gas company through its negligence in permitting, after notice, gas to escape from its pipes into the soil about the roots of the trees.   The sole question there involved was whether the abutting owner had such an interest in the trees as would sustain a right of action in his behalf against a private trespasser or a wanton wrongdoer.   The decision of the court was that he had such right, irrespective of a coexisting right in the municipality owning or controlling the highway.   It by no means held that any such right existed as between the abutting owner and the municipality.   On the contrary, the court said (p. 317): " It is to be observed that we are not dealing with a question arising between an abutting owner and the city authorities, for in such a case the rights of the latter are paramount, so long as the road is kept open and unobstructed.   Nor are we dealing with a question between him and a corporation authorized to use the streets for some public purpose, where it becomes necessary to cut shade trees in order to effect that purpose.   It is not the question which might have

arisen when the defendant many years ago laid its pipes in the street, if it had then been necessary to cut the trees which are the subject of this action in order to do the work properly and they had been cut for that purpose with the approval of the city authorities. The defendant did not let its gas escape with the consent of the officers in control of the street. It did not act in accordance with law, but in violation of law. It was not a semi-wrongdoer as were the elevated railroad companies, but an absolute wrongdoer. It was a naked trespasser and its act was a nuisance which inflicted special injury upon private property, for it reduced the value of the plaintiff's premises by the sum of $150, as the jury found."

The right of the abutting owner rests upon the proximity of the street and the situation of the owner's land with reference to the street giving him a special right " to the enjoyment and use of whatever is permitted or maintained by the public authorities as a part of the street " (p. 319).

So long as " a shade tree is physically and legally a part of the street, he is entitled to all the special benefits which flow therefrom to his lot, free from interference by a wrongdoer, but subject to removal by the municipal government " (p. 320). His right is only to have such trees protected " against negligent or willful destruction at the hands of third parties " (p. 321).

So, too, in *Lane* v. *Lamke* (*supra*) it was said that an abutting owner " may recover in trespass against one who without official authority destroys shade trees in a street in front of his premises " (p. 397).

It will thus be seen that the very authorities upon which the objectors rely recognized that the municipality may do the very acts which third parties would be liable to the owner for doing without municipal consent and that abutting owners are without redress where the act is done by or pursuant to proper authority.

This distinction was clearly pointed out by Mr. Justice CROPSEY in *Kingsley* v. *Pounds* (96 Misc. 27).

There an abutting owner sought to enjoin the borough president of the borough of Brooklyn, city of New York, from issuing a permit to move certain houses over a street, which removal would destroy trees and shrubs planted in the parking of the center of the street. Mr. Justice CROPSEY pointed out that if the person seeking to remove the houses sought to destroy those trees and shrubs without the city's authority, the abutting owners could have redress, either by injunction or action for damages under the authority of *Donahue* v. *Keystone Gas Company* and *Lane* v. *Lamke* (*supra*); but he also pointed out that those authori-

ties did not support the owner seeking to prevent a public official from granting a permit, which he had statutory power to issue; and showed that those very authorities held the right of the municipality to be paramount, so that if removal of the trees and shrubs was thus authorized by the municipality, the abutting owner was without redress.

Similarly, in the case of *Hall* v. *House of St. Giles the Cripple* (91 Misc. 122) Mr. Justice KELBY pointed out that whereas an abutting owner, under the decision in the *Donahue Case (supra)*, would have the right to enforce an easement of ornament as against a private trespasser or wrongdoer, nevertheless, that right was subject to interference by the representatives of the public.

In *Matter of Cary* v. *Schwab* (210 App. Div. 867) the Appellate Division affirmed upon the opinion of Mr. Justice PIERCE in the court below the decision in 123 Miscellaneous, 536. Mr. Justice PIERCE there said (p. 540): " While it is undoubtedly true that an abutting property owner has a qualified interest in trees in front of his premises to such an extent that he can recover damage to his property caused by the wrongful interference with the shade trees, he has no such interest and the city has no proprietary interest which prevents the city from improving the street to the extent of removing the trees so as to afford the full benefits to the public which were contemplated when the fee or easement to the street was acquired, and to meet the changed conditions incident to the growth of the city, the increase in travel and the changed means of travel. (*Donahue* v. *Keystone Gas Co.*, 181 N. Y. 313.) "

The principle was most clearly and succinctly stated by the late Chief Justice POUND while sitting at Special Term of the Supreme Court in the case of *St. Mary of the Angels Church* v. *Barrows* (68 Misc. 545). Judge POUND there said (p. 546): " The law is well settled in this State that the rights of the city in making authorized public improvements in the street, with proper care and skill, are paramount to the interest of the abutting owners in trees planted in the street, even though such abutter owns the fee of the street. This is true, although the trees may be injured and although such injury might be avoided by the adoption of a different plan. The court cannot interfere with the discretionary powers of municipal authorities and direct them to save shade trees by paving the street to a width of twenty feet rather than thirty feet, or by laying water pipes in the center of the street rather than in the subway, or by dictating that they shall injure the pavement rather than endanger the shade trees. If detriment to the trees of the abutter results from the adoption

of such a plan of improvement in the street by proper corporate action, the case is one of *damnum absque injuria.* (*Donahue* v. *Keystone Gas Co.,* 181 N. Y. 313.)"

In the light of the foregoing must be read the opinion by the Court of Appeals, also written by Judge POUND, in *Matter of Goodrich* v. *Village of Otego* (216 N. Y. 112). That was a proceeding to obtain an award of damages by an abutting owner resulting from the change of grade of a village street. It was governed by the statutory provision in the Village Law entitling such owner to compensation where his land has been " injuriously affected " by such change of grade. The owner had been awarded the sum of $200 damages to the fee, upon the ground that the land had been injuriously affected to that extent by the change of grade. He claimed that the award should be itemized so as to allow a specific amount for damage to and loss of shade trees. Overruling that contention the court said (p. 117): " At common law, where no compensation was allowed to the abutting owner, the municipal authorities had the right to destroy shade trees in the street without compensation when making authorized highway improvements, such as a change of grade, but the purpose of the statute is to impose liability when the land adjacent to the street is injuriously affected, as it may be by damage to shade trees. (*Donahue* v. *Keystone Gas Co.,* 181 N. Y. 313.) It was, therefore, unnecessary to separate the items making up the $200 for the purpose of showing that $100 thereof was for damage to shade trees."

It is apparent, therefore, that in the case last cited there was no departure from the well-established principle. On the contrary, the utmost than can be gleaned from that decision is that where a statute specifically provides for compensation where land adjacent to a street is injuriously affected by a change of grade, the element of damage to shade trees may be taken into consideration in determining the extent to which such land has been injuriously affected by the change.

I do not understand that such a situation is here presented. On the contrary, here we have an existing highway within the bounds of which are certain shade trees. The municipality widens the highway as is its right. As a result of such widening, it may very well result that the shade trees will so obstruct or interfere with traffic on the highway as to require their removal. If that be so, it is the right and duty of the municipality to remove them. That is a proper and legitimate purpose, in the exercise of which the rights of the municipality are paramount to those of the abutting owner; and upon the principles and under the authorities referred to, the latter is without redress.

Where, however, trees are on the land taken, the taking and removal of such trees constitute an element of damage to be taken into consideration. This the commissioners have done, and have included an allowance therefor in their award. I cannot find that it is inadequate. Nor do I find reason to disturb the determination of the commissioners with respect to so-called " consequential damage." Upon testimony and view they have based their award upon value before and after the taking, which is the correct rule.

Motion granted.